James W. WRIGHT and Big Jim's, Inc., Appellants,

v.

The TOWN OF HUXLEY, Iowa, et al., Appellees.

No. 2–57214.

Supreme Court of Iowa.

Jan. 19, 1977.

Raymond Rosenberg and Robert A. Wynn, Des Moines, for appellants.

Donald L. Smith, of Reynolds, Gilchrist, Nutty, Smith & Sharp, Ames, for appellees.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and HARRIS, JJ.

LeGRAND, Justice.

This is a declaratory judgment action asking that an ordinance enacted by the town council of Huxley, Iowa, be declared unconstitutional. The trial court held part of the ordinance was valid and part void. Plaintiffs appeal from that portion of the judgment adverse to them; defendants cross-appeal. We affirm on both appeals.

The case was submitted on stipulated facts. Big Jim's, Inc. is a corporation which holds a combination class C beer and liquor license. The corporation operates a restaurant and tavern in Huxley. Plaintiff James W. Wright was formerly the sole owner of this business. He is now president of the corporation. For convenience, we refer to both plaintiffs as Big Jim's. The defendants are the town of Huxley and a number of its officers. Although now Huxley should be called a city rather than a town, (§ 362.2(1), The Code, 1975), it was designated throughout these proceedings by the latter name. We therefore refer to Huxley and its officers jointly as the town.

The ordinance in question contains these provisions:

"16.5 'EXHIBITION DANCING PROHIBITED. It shall be unlawful for any person holding a liquor control license or retail beer permit to allow or permit any form of exhibition dancing on licensed premises.'

"16.6 'EXHIBITION DANCER PROHIBITED. It shall be unlawful for any person to engage in exhibition dancing on licensed premises.'

"16.7 'NUDITY PROHIBITED. It shall be unlawful for any person holding a liquor control license or retail beer permit to allow or permit a public appearance on licensed premises by any person who is nude or who exposes to public view his or her breasts, buttocks or genitals.'

"16.8 'NUDE PERSON PROHIBITED. It shall be unlawful for any person to appear publicly on licensed premises who is nude or who exposes to public view his or her breasts, buttocks or genitals.' "

The ordinance makes a violation of its provisions punishable by fine or jail term.

Instead of waiting to be charged with a violation of the ordinance, Big Jim's challenged its validity by this declaratory judgment action.

I. We deal first with a preliminary matter which seems to disturb the parties but which we feel is without significance under the facts before us.

Big Jim's argues the right of the town to pass the ordinances depends upon power granted local authorities under the Home Rule Amendment to the Iowa Constitution and subsequent statutory enactments. Big Jim's further insists liquor control is among the powers the city had not elected to exercise under the optional provisions of the statute. See Chapter 1088, § 9, Acts of the 64th G.A. as amended by Chapter 1212, § 1, Acts of the 65th G.A. (1974). Cf. City of Burlington v. Citizens to Protect Our Freedoms, 214 N.W.2d 139, 140 (Iowa 1974).

We give this matter no further consideration because we conclude the town's power to legislate as it did does not depend on home rule authority.

■ The power of the State to regulate the liquor business is broad and comprehensive, much more so than in the conduct of other private endeavors. The general rule is stated this way in 45 Am.Jur.2d Intoxicating Liquors § 24 at 503 (1969):

"The state has far broader power and greater latitude to regulate and restrict the use, distribution, or consumption of liquor than to regulate or restrict ordinary business, because of the effect of the former on the health and welfare of the public."

This concept was formidably strengthened by the 21st Amendment to the federal constitution, which included this language:

"Section 2. The transportation or importation into any State, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

In commenting on this matter in California v. LaRue, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342, 349–350 (1972) the Supreme Court of the United States had this to say:

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recog-

nized as conferring something more than the normal state authority over public health, welfare, and morals. * * *
"These decisions did not go so far as to hold or say that the Twenty-first Amendment supersedes all other provisions of the United States Constitution in the area of liquor regulations. * * * But the case for upholding state regulation in the area covered by the Twenty-first Amendment is undoubtedly strengthened by that enactment * * *."

Generally on the broad power to regulate beer or liquor operations *see State v. Dahnke,* 244 Iowa 599, 602, 57 N.W.2d 553, 555 (1953); *State v. Arluno,* 222 Iowa 1, 14, 268 N.W. 179, 185 (1936); *DuPont v. Planning & Zoning Com'n,* 156 Conn. 213, 240 A.2d 899, 902 (1968); *State ex rel. Hart v. Parham,* 412 P.2d 142, 147 (Okl.1966); *Miller v. Zoning Com'n,* 135 Conn. 405, 65 A.2d 577, 578 (1949); *State ex rel. Galle v. City of New Orleans,* 113 La. 371, 36 So. 999, 1003 (1904); *cf. Craig et al. v. Boren et al.,* —— U.S. ——, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

■ Even conceding the authority of the State, Big Jim's contends this power is not delegable to municipalities. We do not agree. We hold § 123.39 includes a proper and valid delegation of authority to cities and towns. It provides in part:

"Local authorities shall have the power to suspend any retail beer permit or liquor control license for a violation of any ordinance or regulation adopted by such local authority. *Local authorities are empowered to adopt ordinances or regulations for the location of the premises of retail beer and liquor control licensed establishments and are empowered to adopt ordinances, not in conflict with the provisions of this chapter and that do not diminish the hours during which beer or alcoholic beverages may be sold or consumed at retail, governing any other activities or matters which may affect the retail sale and consumption of beer and alcoholic liquor and the health, welfare and morals of the community involved.*" (Emphasis supplied.)

In an early case this court said in *State ex rel. Witter v. Forkner,* 94 Iowa 1, 13, 62 N.W. 772, 775–776 (1895):

"That it is competent for the legislature to empower municipalities to make ordinances and adopt regulations for controlling, licensing, or prohibiting the traffic in intoxicating liquors, is plain, and is not questioned in this case. It is entirely in accord with the principle of local self-government that the power to enact police regulations on matters so closely connected with the good order and prosperity of a city should be lodged with those best qualified to judge of measures adapted to meet the emergencies of these particular situations. And it is competent for the legislature, in its wisdom, to invest them with the authority necessary to the administration of the special purposes of their creation."

*Cf. Crownover v. Musick,* 9 Cal.3d 405, 107 Cal.Rptr. 681, 509 P.2d 497, 504 (1973), *cert. denied, Owen v. Musick,* 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974). We hold there is no merit to Big Jim's contention passage of the ordinance was beyond the town's municipal authority. Nor do we agree with the argument that the authority granted in § 123.39 is limited to the issuance or suspension of licenses. The italicized portion of the quoted statute refutes any such conclusion.

II. We next take up the claim the ordinance is unconstitutional.

Much of Big Jim's argument proceeds on the premise the power to regulate liquor business is like the power to regulate other private activities; but, as already pointed out, the law has always recognized a greater need to control traffic in liquor because of its greater effect on "public health, welfare and morals."

The Iowa Liquor Control Act (Chapter 123), announces this public policy in § 123.1:

"This chapter shall be cited as the 'Iowa Beer and Liquor Control Act', and shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety

of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be the public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as provided in this chapter."

See also *Soursos v. City of Mason City,* 230 Iowa 157, 158, 296 N.W. 807, 808 (1941) where this court said:

"However, said law [the beer permit law] is primarily a police regulation rather than a revenue act. It relates to an occupation or business regarded as requiring substantial restriction, supervision and control * * * The act itself recognizes the necessity of strictly regulating the handling and sale of beer for the protection of the public welfare and morals. Citations."

This brings us to a consideration of the specific constitutional attacks made on the ordinance in question. This presents two separate problems. The first involves the two sections of the ordinance prohibiting exhibition dancing (§ 16.5 and § 16.6). The second involved two sections regulating nudity (§ 16.7 and § 16.8).

As to the first two sections, the trial court found the ordinance was unconstitutional for both vagueness and overbreadth. The town appeals from this finding.

The two sections involving nudity were found to be constitutional and valid. Big Jim's appeals from this determination.

III. We consider, first, the question of the town's cross-appeal challenging the trial court's finding that a general prohibition against exhibition dancing on the licensed premises is unconstitutional for vagueness and overbreadth.

■ Vagueness and overbreadth, while closely related, are separate concepts. *State v. Wedelstedt,* 213 N.W.2d 652, 656 (Iowa 1973). We agree with the trial court that the portion of the ordinance relating to exhibition dancing is both vague and over-

broad, although we base our conclusion principally on the former.

■ A statute is said to be vague in the constitutional sense when it forbids or requires the doing of an act in terms so uncertain that men of common intelligence must necessarily guess at its meaning and differ as to its application. *State v. Price,* 237 N.W.2d 813, 815 (Iowa 1976) and citations; *State v. Wedelstedt, supra,* 213 N.W.2d at 656; *State v. Williams,* 171 N.W.2d 521, 527 (Iowa 1969), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1837, 26 L.Ed.2d 268 (1970).

■ In the present case, the council attempted to ban all "exhibition dancing." However, it did not define exhibition dancing or in any way limit the application of that term. Obviously, it was not meant to prohibit all dancing, or the qualifying term "exhibition" would have been unnecessary. Neither did it mean to ban only nude dancing because that is done in other sections of the ordinance. "Exhibition" has a number of dictionary definitions. We set out a few of them here:

"A showing; a display; a thing or things shown publicly; a public show." The World Book Dictionary (1974) at 731.

"Something that one views, or at which one looks, * * *." Black's Law Dictionary, Rev. 4th Ed., (1968) at 683.

"An exhibiting, showing, or presenting to view, a public display, as of the works of artists, or craftsmen * * * the skills of performers * * *." The Random House Dictionary (1966) at 499.

We hold §§ 16.5 and 16.6 are so vague and uncertain that it is impossible for persons of common intelligence to ascertain with certainty when permissible dancing stops and prohibited dancing starts.

We hold those two sections to be in violation of the 14th Amendment due process clause. They are therefore invalid. We need not, and do not, consider the other constitutional objections raised to these two sections.

IV. We next consider Big Jim's appeal, which asserts the trial court erroneously

found the two provisions of the ordinance dealing with nudity were valid and enforceable. (§§ 16.7 and 16.8) Again, we affirm the trial court.

In doing so we rely in large measure on the broad power to regulate the liquor business discussed in Division I of this opinion.

Big Jim's assault upon this part of the ordinance takes several paths. First it claims a violation of First Amendment rights because the dance is an accepted method of expression and the ordinance is an interference with the right of free speech.

One of the leading cases in this area is *California v. LaRue, supra.* That case concerned a state liquor department regulation prohibiting certain sexually explicit entertainment at licensed bars and nightclubs. There, as here, a claim was made that the regulations were an unconstitutional interference with the performers' freedom of expression under the 1st and 14th Amendments to the Federal Constitution.

The court said (409 U.S. 117–118, 93 S.Ct. 396–397, 34 L.Ed.2d 351–352):

"In *Schacht v. United States,* 398 U.S. 58, 63, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), the Court said with respect to theatrical productions: 'An actor, like everyone else in our country, enjoys a constitutional right to freedom of speech, including the right openly to criticize the Government during a dramatic performance.'

"But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulation significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of 'conduct' or 'action,' *Hughes v. Superior Court,* 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950); *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949). In *O'Brien,* supra, the Court suggested that the extent to which 'conduct' was protected by the First Amendment de-

pended on the presence of a 'communicative element,' and stated: 'We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.' 391 U.S., at 376, 88 S.Ct. at 1678 [20 L.Ed.2d 672 *United States v. O'Brien* ].

"The substance of the regulations struck down prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, 'performances' that partake more of gross sexuality than of communication. While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

" * * *

"The Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution."

Relying strongly on *LaRue,* the Supreme Court of Massachusetts reached a similar result in two cases. *See Boston Licensing Board v. Alcoholic Beverages Control Commission,* 328 N.E.2d 848 (Mass.1975) and *City of Revere v. Aucella,* 338 N.E.2d 816 (Mass.1975). *See also State v. Nelson,* 178 N.W.2d 434, 441 (Iowa 1970); *Hoffman v. Carson,* 250 So.2d 891, 894 (Fla.1971); *Major Liquors, Inc. v. City of Omaha,* 188 Neb. 628, 198 N.W.2d 483, 488 (Neb.1972); *City of Portland v. Derrington,* 253 Or. 289, 451 P.2d 111, 114, *cert. denied,* 396 U.S. 901, 90

S.Ct. 212, 24 L.Ed.2d 177 (1969); *Crownover v. Musick, supra,* 509 P.2d at 514.

We agree with the reasoning of the foregoing authorities. The "expression" element of the nude dancing prohibited by this ordinance is surely incidental, as any patron of Big Jim's would probably concede. We hold the ordinance is not an unconstitutional encroachment on 1st Amendment rights.

Now it is Big Jim's, rather than the town, which says the ordinance is both vague and overbroad. We discussed vagueness in Division III hereof and need not repeat what we said there. "Overbroad" refers to language which attempts to accomplish its purpose by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. It not only forbids conduct constitutionally subject to proscription but also includes those actions ordinarily deemed to be constitutionally protected. *See State v. Wedelstedt, supra,* 213 N.W.2d at 656, and citations.

We consider first the issue of vagueness.

There is no merit to this contention. The ordinance is explicit and specific in its prohibition. We find it difficult to believe Big Jim's seriously contends people of common intelligence would not understand the meaning of nudity or would not be able to determine when the ordinance was violated by exposing to public view the breasts, buttocks, or genitals.

The question of overbreadth is less certain. Big Jim's complaint here is that the ordinance offends by including in its interdiction men as well as women. We might observe that a failure to do so undoubtedly would have triggered an equal protection challenge.

Big Jim's argues it is not a reasonable exercise of police power to forbid men to appear in public with breasts exposed. He cites the male swimming truck example and asks if all who are thus attired are to be guilty of violating this ordinance.

That hypothetical set of facts is not before us. The case is here, not to test a conviction under a specific factual background, but on a declaratory judgment action. Until a case involving the hypothesis posed by Big Jim's is before us, the overbreadth of the ordinance should not be decided.

This same issue was met in the *LaRue* case by this language:

> "Because of the posture of this case [a declaratory judgment action], we have necessarily dealt with the regulations on their face, and have found them to be valid. The admonition contained in the Court's opinion in *Seagram & Sons v. Hostetter,* 384 U.S. 35, 52, 86 S.Ct. 1254, 1264, 16 L.Ed.2d 336 (1966), is equally in point here: 'Although it is possible that specific future applications of [the statute] may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise. We deal here only with the statute on its face. And we hold that so considered, the legislation is constitutionally valid.'"

The Massachusetts Supreme Court also reserved the resolution of that question with this language (328 N.E.2d at 852):

> "Like the Supreme Court in the *LaRue* case, we think we should reserve for another day the question whether some specific application of the regulations may engender problems of constitutional dimension * * * Similarly, we think we should not now pass on such questions as whether their possible application in one hypothetical case would render them overbroad and hence invalid in another hypothetical case, how far they are severable, or whether they are underinclusive so as to discriminate unfairly."

*See also City of Revere v. Aucella, supra,* 338 N.E.2d at 817.

We, too, reserve such questions "for another day" when a controversy based on a specific claimed violation is before us. All we hold now is that the ordinance on its face passes constitutional tests.

It is significant that both *LaRue* and *Boston* were declaratory judgment actions. *Revere* was a suit seeking an injunction to prevent enforcement of the ordinance. Like the present appeal, none of these cases involved a particular set of facts alleged to violate the ordinance or regulation involved.

For the reasons stated, we affirm the trial court on both appeals.

We add this caveat. Our decision does not apply to statutes or ordinances banning nudity in all public places. It is limited to the broad power of the state or municipality to regulate liquor traffic and to prohibit specified conduct on premises holding a beer or liquor license under Chapter 123, The Code. *Cf. Koppinger v. City of Fairmont,* 248 N.W.2d 708 (Minn.1976).

AFFIRMED ON BOTH APPEALS.